UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

COASTAL FINANCIAL CORPORATION, ERIC M. SPRINK, JOEL EDWARDS, and BRANDON SOTO,

Defendants.

Case No. 2:26-cv-03746

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**DEMAND FOR JURY TRIAL**



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Plaintiff Allegheny County Employees' Retirement System ("Plaintiff"), by and through undersigned counsel, alleges the following upon personal knowledge as to matters concerning Plaintiff, and upon information and belief as to all other matters. Plaintiff's information and belief are based on, among other things, counsel's investigation, which included a review and analysis of: (i) regulatory filings made by Coastal Financial Corporation ("Coastal" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (ii) press releases, presentations, and media reports issued by and disseminated by the Company; (iii) analyst and media reports concerning the Company; and (iv) other public information regarding the Company. Plaintiff believes that further substantial evidentiary support will exist for the allegations contained herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Coastal common stock between October 28, 2024 and July 29, 2026, inclusive (the "Class Period") against Coastal and certain of Coastal's officers and executives (collectively, "Defendants"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2. Coastal is a registered bank holding company headquartered in Everett, Washington, whose wholly owned subsidiaries include Coastal Community Bank (the "Bank"). Coastal conducts its business through three reportable segments: the Bank, CCBX, and treasury and administration. Through its CCBX segment, Coastal provides "banking as a service" ("BaaS") to digital financial service providers, companies, and brands, enabling its partners to offer banking and other financial services to their customers.

3. During the Class Period, Defendants made materially false and misleading statements concerning the growth and credit quality of Coastal's CCBX business, the adequacy of the Company's risk management and credit monitoring practices, and the credit protections afforded by Coastal's CCBX partner indemnification agreements. While touting the continued growth of CCBX and representing that such growth was being pursued in a disciplined manner



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

with a focus on risk management and credit quality, Defendants failed to disclose that the credit quality of a substantial CCBX partner loan portfolio, comprising approximately $500 million in loans and nearly 23% of all CCBX loans, had materially deteriorated, exposing Coastal to significant losses notwithstanding the purported credit protection provided by the partner's indemnification agreement.

4. The truth was revealed on July 30, 2026, when Coastal announced its second quarter 2026 financial results and, for the first time, held an earnings call to provide investors with additional context concerning its financial performance and key developments. During the call, Defendants acknowledged that the quarter included "***significant and unusual items that warrant a direct explanation.***"[1] Coastal reported a surprise GAAP net loss of $42.1 million, driven primarily by a $68.8 million credit expense associated with a single CCBX partner relationship. The credit expense consisted of a $46 million valuation adjustment to the related credit enhancement asset and a $22.8 million provision for credit losses associated with the partner's indemnification obligations. Defendants further disclosed that the affected portfolio consisted of approximately $500 million in underlying loans, together with the related reimbursement exposure.

5. On this news, Coastal's common stock price fell $30.75 per share, or 43.5%, to close at $39.91 per share on July 30, 2026, erasing approximately $470 million in market capitalization and causing substantial losses to investors.

6. As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Coastal's common stock, Plaintiff and other members of the Class suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. This

[1] Unless otherwise noted, all emphasis is added.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) because Coastal maintains its corporate headquarters in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

9. In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets.

**PARTIES**

10. Plaintiff Allegheny County Employees' Retirement System is a defined-benefit retirement system that provides retirement benefits to eligible employees of Allegheny County, Pennsylvania. As reflected in the certification submitted herewith, Plaintiff purchased Coastal common stock at artificially inflated prices during the Class Period and suffered damages as a result of Defendants' violations of the federal securities laws alleged herein.

11. Defendant Coastal Financial Corporation is a registered bank holding company headquartered in Everett, Washington. Coastal's common stock trades on the NASDAQ under the ticker symbol "CCB."

12. Defendant Eric M. Sprink served as Coastal's Chief Executive Officer and a member of the Company's board of directors at all relevant times. Sprink sold approximately $12 million of Coastal common stock during the Class Period.

13. Defendant Joel Edwards served as Coastal's Chief Financial Officer ("CFO") from 2012 until his retirement in 2025, and subsequently returned to the Company as Interim CFO, effective August 15, 2026. Edwards sold approximately $3.8 million of Coastal common stock during the Class Period.

14. Defendant Brandon Soto served as Coastal's Executive Vice President and CFO from October 1, 2025 through August 15, 2026.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

15. Defendants Sprink, Edwards, and Soto are collectively referred to hereinafter as the "Individual Defendants" and together with Coastal, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Company Background

16. Coastal is a registered bank holding company headquartered in Everett, Washington that conducts its banking operations through the Bank, its wholly owned subsidiary. The Bank has $4.48 billion in assets and provides service through 14 branches in Snohomish, Island, and King Counties in Washington, as well as through its online and mobile banking platforms.

17. Coastal operates through three reportable segments: the Bank, CCBX, and treasury & administration. The Bank segment provides banking products and services primarily to consumers and small- and medium-sized businesses throughout the greater Puget Sound region. Through CCBX, Coastal provides BaaS to digital financial service providers, companies, and brands, enabling those partners to offer banking and other financial services to their customers. The treasury & administration segment includes investments, debt, and other items that are not attributable specifically to the Bank or CCBX segments.

18. CCBX represented a substantial and growing component of Coastal's business during the Class Period. As of December 31, 2024, CCBX loans receivable totaled $1.60 billion, representing 45.9% of Coastal's total loans receivable. By December 31, 2025, CCBX loans receivable had increased to $1.81 billion, representing 48.1% of Coastal's total loans receivable. By June 30, 2026, gross CCBX loans receivable had further increased to approximately $2.23 billion, and Coastal had 22 active CCBX partner relationships.

### B. Defendants' Materially False and Misleading Statements

19. The Class Period begins on October 28, 2024. On that day, Coastal announced its third quarter 2024 financial results and discussed the growth of its CCBX business and its purported focus on managing the risks associated with that growth, stating:



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

> Products launched in 2024 with existing partners have gained traction and are growing the balance sheet and increasing income. The pipeline for CCBX is active, although ***we expect to remain selective in adding new partners to manage risk and capital.***

20. Defendant Sprink further emphasized Coastal's purported focus on risk management and credit quality, stating:

> As we look ahead to the fourth quarter and 2025, ***we remain laser focused on building out our technology and risk management infrastructure to more efficiently support our next phase of growth within CCBX.*** While the balance sheet re-mix earlier this year resulted in a short-term reduction to income, ***we continue to make strategic decisions which are enhancing credit quality,*** generating passive fee income, strengthening our talent and ***growing relationships with established and prospective CCBX partners all of which are expected to position Coastal to be more profitable in 2025.***

21. On January 28, 2025, in announcing Coastal's fourth quarter and full year 2024 financial results, Defendant Sprink touted the continued growth of the Company's CCBX business, stating that "***our CCBX program fee income continued to increase, which was up 56.9% for full-year 2024 relative to the prior year.***" Sprink also emphasized Coastal's continued investment in risk management: "As we look forward to 2025, ***our strategy involves selectively expanding our current base of CCBX partners while continuing to invest in and enhance our technology and risk management infrastructure.***"

22. On April 29, 2025, in connection with the release of Coastal's first quarter 2025 financial results, Defendants touted the continued expansion of the CCBX business and Coastal's purported protections against the risks associated with that growth. Under the heading "Positive Growth Trends within CCBX Continue," Defendants highlighted Coastal's pipeline of new partners and products and represented that the Company "***remain[ed] fully indemnified against fraud and 98.8% indemnified against credit risk with our CCBX partners as of March 31, 2025***."

23. That same day, Coastal published an investor presentation emphasizing the Company's investments in compliance and risk management to support CCBX's continued growth. The presentation represented that Coastal had "significantly increased" its "risk



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

personnel" as the CCBX business expanded and that risk personnel accounted for 29% of the Company's staff.

24. Three months later, on July 29, 2025, Coastal issued a press release announcing its second quarter 2025 financial results and published a related investor presentation. The investor presentation continued to emphasize Coastal's investment in risk management, representing that risk personnel had increased to one-third (33%) of the Company's employees.

25. On August 13, 2025, Coastal announced the appointment of four new members to its executive leadership team to support the Company's continued growth, "expand our product offerings, deepen relationships, ***manage risk***, and safeguard the infrastructure across the bank and our embedded finance offerings." Among the new appointments was Freddy Rivas as Chief Credit Officer. Coastal highlighted Rivas's more than two decades of commercial banking and credit leadership experience, including his most recent role as Chief Risk Officer at Santander Bank. Commenting on the appointments, Defendant Sprink stated that "[t]hese appointments reflect our commitment to building an executive team with the experience and expertise needed to lead the Bank through its next phase of growth."

26. Five weeks later, on September 22, 2025, Coastal announced another change to its executive leadership team with the appointment of Defendant Soto as CFO. In announcing the appointment, Coastal stated that it "marks a new chapter for Coastal, reaffirming its dedication to operating excellence, strong regulatory stewardship, and the continued scaling of both its fintech and community banking divisions."

27. On October 29, 2025, Coastal announced its third quarter 2025 financial results. The press release reported that CCBX program fee income continued to grow, increasing by more than 11% during the quarter. Defendants also emphasized Coastal's purported ability to manage the risks associated with its business, stating that they "***remain confident in our ability to*** manage expenses and ***maintain credit quality***, even in a changing economic and interest rate environment." CCBX program fee income continued to grow the following quarter, increasing by another 11%, as reported in Coastal's fourth quarter 2025 financial results announced on January 29, 2026.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

28. Finally, on April 29, 2026, Coastal announced its first quarter 2026 financial results. Defendant Sprink touted continued growth in the CCBX segment, reporting that CCBX program fee income had increased 22.3% during the quarter. Commenting on the results, Sprink stated: "We expect growth to continue as current programs scale, new products are introduced, and we leverage our experience in the BaaS space to support ***disciplined, sustainable expansion.***" Sprink further stated:

> ***We continued to see strength in our CCBX segment in the first quarter, driven by the performance of our existing partners,*** new products and the addition of new relationships. ***We've been intentional about how we grow, and that includes focusing on credit quality as portfolios mature*** and ensuring we're operating in a safe and sound manner as expectations around bank-fintech partnerships continue to evolve.

29. Defendants also reiterated Coastal's purported protection against credit losses associated with its CCBX partners, representing that the Company had "***contracts with our partners that fully indemnify us against fraud and 98.8% against credit risk on CCBX loan partner balances as of March 31, 2026.***"

30. The foregoing statements were materially false and misleading when made because, while touting the continued growth of the CCBX business and representing that such growth was being pursued in a disciplined manner with a focus on risk management and credit quality, Defendants misrepresented and failed to disclose that: (i) the credit quality of a substantial CCBX partner loan portfolio, comprising approximately $500 million in loans and nearly 23% of all CCBX loans, had materially deteriorated; (ii) as a result of that deterioration, Coastal faced significant exposure to credit losses notwithstanding Defendants' repeated representations concerning the credit protections provided by its CCBX partner agreements; and (iii) Coastal's risk management and credit monitoring practices were inadequate to identify, adequately account for, and mitigate the deterioration of the CCBX partner loan portfolio and the resulting risks to Coastal.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

**C. The Truth is Revealed**

31. On July 30, 2026, before the market opened, Coastal announced its second quarter 2026 financial results, reporting a GAAP net loss of $42.1 million, driven primarily by a $68.8 million credit expense related to a single CCBX partner relationship.

32. In connection with the results, Coastal also held its first-ever earnings call, which Defendants explained was intended to provide investors "with more direct access to management and greater context around our financial performance, go-forward strategy, and key developments across both CCBX and Coastal Community Bank." At the outset of the call, Defendants acknowledged that the quarter included "***significant and unusual items that warrant a direct explanation.***"

33. During the call, Defendants revealed that the $68.8 million credit expense consisted of a $46 million valuation adjustment to the related credit enhancement asset and a separate $22.8 million provision for credit losses associated with the partner's indemnification agreement. Defendants further disclosed that the "affected population" consisted of a defined portfolio of approximately $500 million in underlying loans, together with the related reimbursement exposure.

34. On this news, the price of Coastal common stock declined $30.75 per share, or 43.5%, to close at $39.91 per share on July 30, 2026, erasing approximately $470 million in market capitalization.

**D. Additional Scienter Allegations**

35. During the Class Period, Defendants acted with scienter in that they knew, or recklessly disregarded, that the public documents and statements they issued or disseminated to the investing public during the Class Period were materially false or misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as well as actions intended to manipulate the market price of Coastal common stock, as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Coastal and their control over, receipt,



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

and/or modification of Coastal's materially false and misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

36. Defendants knew or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public concerning the credit quality of Coastal's CCBX loan portfolios, the Company's risk management and credit monitoring practices, and the protections afforded by its CCBX partner indemnification agreements. The fraudulent scheme described herein could not have been perpetuated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.

37. Given their positions within Coastal, the Individual Defendants controlled the contents of Coastal's public statements during the Class Period. The Individual Defendants were each provided with, or had access to, the statements alleged herein to be false and misleading prior to, or shortly after their issuance, and had the ability as well as the opportunity to prevent their issuance or cause them to be corrected.

38. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were false and misleading. As a result, each of the Defendants is responsible for the accuracy of Coastal's corporate statements, and is, therefore responsible and liable for the representations contained therein.

39. Defendants' scienter is further supported by the magnitude and concentration of the credit deterioration that ultimately resulted in the $68.8 million credit expense. The expense arose from a single CCBX partner relationship involving a defined portfolio of approximately $500 million in underlying loans and related reimbursement exposure. As of June 30, 2026, Coastal had 22 active CCBX partners representing approximately $2.2 billion in loans, meaning this single partner accounted for nearly 23% of all CCBX loans. Moreover, the $68.8 million credit expense, consisting of a $46 million valuation adjustment to the related credit enhancement asset and a



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

$22.8 million provision for credit losses related to the partner's indemnification agreement, represented nearly 14% of the partner's entire loan portfolio. The size and significance of this relationship and the magnitude of the resulting credit expense support a strong inference that Defendants knew, or were deliberately reckless in not knowing, of the deterioration in the partner's loan portfolio. Indeed, while this single relationship represented nearly one-quarter of all CCBX loans, Defendants repeatedly assured investors that Coastal was focused on credit quality, had invested substantially in its risk management infrastructure, and was pursuing "disciplined, sustainable expansion" of the CCBX business. These assurances were made against the backdrop of Coastal's substantial commitment of personnel to risk management, with the Company representing by July 2025 that approximately one-third of its employees were dedicated to risk management. At a minimum, Defendants were deliberately reckless in failing to identify and disclose the deterioration and resulting exposure while continuing to assure investors concerning Coastal's credit quality, risk management practices, and contractual protections against CCBX credit losses.

40. Defendants' scienter is further supported by significant insider sales during the Class Period. Defendant Sprink sold approximately $12 million of Coastal common stock during the Class Period, while Defendant Edwards sold approximately $3.8 million. These sales occurred while Defendants were making the materially false and misleading statements alleged herein and before the truth concerning the deterioration of the CCBX partner portfolio and Coastal's resulting exposure was disclosed to investors.

41. The departures of senior executives responsible for Coastal's risk and financial functions further support the inference of scienter when considered together with the foregoing allegations. On October 2, 2025, Coastal disclosed that its Chief Risk Officer, Andrew Stines, had resigned effective September 29, 2025. Then, on July 22, 2026, Coastal announced that Defendant Soto would step down as CFO effective August 15, 2026, less than ten months after assuming the position and just eight days before Coastal disclosed the $68.8 million credit expense associated with the CCBX partner relationship.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

42. Taken collectively, the size and importance of the affected CCBX partner relationship, the magnitude of the resulting credit expense, Coastal's substantial risk management infrastructure, Defendants' repeated representations concerning credit quality and risk management, the departures of senior executives responsible for financial and risk oversight, and the Individual Defendants' Class Period stock sales support a strong inference that Defendants knew, or were deliberately reckless in not knowing, that their statements concerning Coastal's CCBX business were materially false and misleading when made.

**E. Loss Causation**

43. Plaintiff and other class members were damaged as a result of Defendants' fraudulent conduct as alleged herein. During the Class Period, Defendants engaged in a scheme to deceive investors by issuing a series of material misrepresentations, and omitting material facts and uncertainties required to be disclosed, relating to Coastal's operations, business, financial performance, and prospects.

44. As a direct result of Defendants' scheme, misrepresentations of material fact, and omissions of material fact, the price of Coastal's common stock was artificially inflated throughout the Class Period.

45. Class members unknowingly and in reliance on Defendants' materially false or misleading statements and/or omissions purchased Coastal common stock at artificially inflated prices on the NASDAQ. But for Defendants' misrepresentations, omissions, and fraudulent scheme, Plaintiff and other class members would not have purchased Coastal common stock at the artificially inflated prices at which it traded during the Class Period.

46. The truth regarding Defendants' fraud was revealed on July 30, 2026, when Coastal disclosed the significant credit deterioration and resulting losses associated with a single CCBX partner relationship. In response to these disclosures, the price of Coastal common stock fell precipitously, declining $30.75 per share, or 43.5%, as the artificial inflation caused by Defendants' unlawful conduct was removed from Coastal's stock price.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

47. This decline in Coastal's stock price following the corrective disclosures is directly attributable to the market absorbing information that disclosed the falsities in or misleadingly omitted from Defendants' material misrepresentations and omissions.

48. Plaintiff and other class members suffered economic losses as the price of Coastal's stock fell in response to the corrective disclosures. It was foreseeable that such disclosures would cause Coastal's stock price to decline. Thus, Defendants' wrongful conduct, as alleged herein, directly, and proximately caused the damages suffered by Plaintiff and other class members.

**F. Inapplicability of the Statutory Safe Harbor**

49. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this complaint. Many of the specific statements pled herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pled herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and/or the forward-looking statement was authorized and/or approved by an executive officer of Coastal who knew that those statements were false when made.

**G. Presumption of Reliance: Fraud on the Market**

50. At all relevant times, the market for Coastal common stock was an efficient market for the following reasons, among others:

a. Coastal common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient, national stock market;

b. as a regulated issuer, Coastal filed periodic public reports with the SEC;

c. Coastal regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d. Coastal was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

51. As a result of the foregoing, the market for Coastal common stock promptly digested current information regarding Coastal from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of Coastal common stock during the Class Period suffered similar injury through their purchases of Coastal common stock at artificially inflated prices and a presumption of reliance applies.

52. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), individually and on behalf of a Class consisting of all persons and entities that purchased or otherwise acquired the publicly traded common stock of Coastal between October 28, 2024 and July 29, 2026, inclusive.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

54. Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Coastal, members of Coastal's Board, and members of their immediate families (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; (iv) any entity in which Defendants have or had a controlling interest; and (v) any affiliate of Coastal.

55. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Coastal's securities were actively traded on the NASDAQ. While the exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery from Defendants, Plaintiff believes that there are at least hundreds, if not thousands, of members in the proposed Class. Class members may be identified from records maintained by Coastal or its transfer agent and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

56. Plaintiff's claims are typical of all other class members' claims, as all class members are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws complained of herein.

57. Plaintiff will fairly and adequately protect the interests of the class members and has retained counsel competent and experienced in class and securities litigation.

58. Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members. Among the questions of law and fact common to the class are: (i) whether Defendants' acts and omissions as alleged herein violated the federal securities laws; (ii) whether Defendants' statements to the investing public during the Class Period misrepresented or omitted material facts about Coastal's operations, business, performance, and future prospects; (iii) to what extent the class members have sustained damages; and (iv) the proper measure of such damages.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

**COUNT I**

**For Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

a. employed devices, schemes, and artifices to defraud;

b. made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Coastal common stock during the Class Period.

61. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Coastal common stock. Plaintiff and the Class would not have purchased Coastal common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by Defendants' misleading statements.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Coastal common stock during the Class Period.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

## COUNT II

**For Violation of §20(a) of the Exchange Act**
**Against the Individual Defendants**

63. Plaintiff repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

64. The Individual Defendants acted as controlling persons of Coastal within the meaning of Section 20(a) of the Exchange Act. By reason of their positions with the Company, and their ownership of Coastal stock, the Individual Defendants had the power and authority to cause Coastal to engage in the wrongful conduct complained of herein. Coastal controlled the Individual Defendants and all of its employees. By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

b. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including reasonable counsel fees and expert fees; and

c. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

DATED: October 2, 2026

Respectfully submitted,

*/s/Karin B. Swope*
Karin B. Swope (WA Bar # 24015)
*/s/Andrew J. Fuller*
Andrew J. Fuller (WA Bar # 63273)
COTCHETT PITRE & MCCARTHY LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel.: (206) 802-1272
Fax: (206) 299-4184
kswope@cpmlegal.com
afuller@cpmlegal.com

*Liaison Counsel for Plaintiff*

Karin E. Fisch (*pro hac vice* forthcoming)
Vincent J. Pontrello (*pro hac vice* forthcoming)
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
kfisch@gelaw.com
vpontrello@gelaw.com

*Counsel for Plaintiff*